IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIAN BONNER,<br>#K96664,<br><br>Plaintiff,<br><br>vs.<br><br>JESSICA D. STOVER,<br>JASON C. HAHS,<br>DANIEL Q. SULLIVAN, and<br>JOHN R. BALDWIN,<br><br>Defendants. | Case No. 19-CV-0452-NJR |

# **MEMORANDUM AND ORDER**

**ROSENSTENGEL, Chief Judge:**

Plaintiff Julian Bonner, who is committed at Big Muddy River Correctional Center ("Big Muddy") as a "sexually dangerous person" ("SDP"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as denial of accommodations in violation of the requirements of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e. Plaintiff seeks injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Persons like Plaintiff who are civilly committed under the Sexually Dangerous Persons Act (725 Ill. Comp. Stat. 205/0.01 *et seq*.) in Illinois are subject to the Prison Litigation Reform Act ("PLRA") (28 U.S.C. § 1915 *et setq*.). *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004). Therefore, the Complaint shall be screened pursuant to 28 U.S.C. § 1915A.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous,

1

malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

In his Complaint, Plaintiff alleges the following: Plaintiff was placed in the SDP Program in 2002. (Doc. 1, p. 5). He is currently diagnosed with a paraphilic disorder and a personality disorder, and was "historically" diagnosed with learning and speech disorders. (*Id.*, pp. 4-5).

Plaintiff states that his literacy and learning disabilities have not been addressed by staff and that he "has never been offered individualized treatment to assist him to effectively learn treatment concepts." (*Id.*, p. 9). Additionally, he alleges that the entire SDP program is deficient and is not calculated to actually treat any of its participants, but is instead simply a prison term by another name—there is no established curriculum, progress is judged solely by the subjective judgment of staff, and staff persist with ineffective treatment to the extent of failing to use any professional judgment. (*Id.*, pp. 9-11).

Plaintiff alleges that Defendant Stover, the lead therapist in the SDP program, is abusive and "refused to return personal property of the Plaintiff[]." (*Id.*, pp. 5-6). He alleges that Defendant Hahs, a Correctional Counselor at Big Muddy, has constructively denied him access to the administrative grievance procedure by failing to respond to them, and that Stover retaliates against participants who use the grievance process in their semi-annual evaluations. (*Id.*. pp. 6-7, 12). Plaintiff also asserts that Defendant Baldwin, as his court-appointed legal guardian, has failed to acquit his duties in that role. (*Id.*, pp. 7-8).

For clarity, the Court has divided the complaint into five distinct claims as follows:

| | | |
|---|---|---|
| **Count 1:** | | **Fourteenth Amendment claim for failure to adequately treat his paraphilia and related disorders;** |
| **Count 2:** | | **ADA and RA claim against Baldwin for failure to accommodate Plaintiff's learning and intellectual disabilities;** |
| **Count 3:** | | **Fourteenth Amendment claim against Stover for failing to return personal property;** |
| **Count 4:** | | **First Amendment claim against Stover and Hahs for preventing access to the grievance system and retaliating against Plaintiff for attempting to use it; and** |
| **Count 5:** | | **State law claim for breach of fiduciary duty against Baldwin.** |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

Plaintiff seeks injunctive relief only, and has filed his claims against each defendant in his or her official capacity only.

## Discussion

As an initial matter, a substitution of party is required. Plaintiff has named John Baldwin as a defendant in his official capacity as Director of the Illinois Department of Corrections, a position he no longer holds. The Court takes judicial notice that Rob Jeffreys is now the Acting Director, and he will be substituted for Baldwin in these proceedings.

### Count 1

Plaintiff is not serving out a conventional determinant sentence pursuant to a criminal conviction. Rather, the duration of an SDP inmate's confinement depends on his successful

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

3

completion of treatment. As the Seventh Circuit explained in *Allison v. Snyder*, 332 F.3d 1076, 1078 (7th Cir. 2003), "[p]ersons charged with sex offenses in Illinois may be diverted before trial to civil confinement, if a mental illness of at least one year's duration led to the criminal conduct. Those who complete treatment successfully are released and the criminal charges dismissed." The corollary is that without treatment, there is no prospect of release.

Inmates serving sentences for criminal convictions are protected by the Eighth Amendment, but the constitutional protections for civil detainees arise out of the Due Process Clause of the Fourteenth Amendment. *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008). The Supreme Court has not clearly defined the elements of a constitutionally adequate civil detainee treatment program. However, "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). The Seventh Circuit has recognized that the Fourteenth Amendment requires "that civil detainees receive treatment for the disorders that led to their confinement and be released when they've improved enough no longer to be dangerous." *Hughes v. Dimas*, 837 F.3d 807, 808 (7th Cir. 2016). At a minimum, "civil detainees ... are entitled to non-punitive programs designed using the exercise of professional judgment." *Allison*, 332 F.3d at 1080 (internal quotes omitted).

Here, Plaintiff alleges that his treatment program has been ineffective, that the program is underfunded and not designed using professional judgement, and that no professional judgment has been exercised in adapting the program to address his issues. There are questions about which of the defendants (each named solely in their official capacity) would be responsible for implementing injunctive relief and therefore is the appropriate party for this claim. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief

4

is the government official responsible for ensuring any injunctive relief is carried out). There is no indication Hahs, as a Correctional Counselor, has any power over the design and implementation of the SDP program. This claim will move forward, however, against Stover, Sullivan and (by substitution as discussed above) Jeffreys.

**Count 2**

Plaintiff claims that he was discriminated against in violation of the ADA and Rehabilitation Act when he was deprived of accommodation in the SDP program for his disability. In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id*. at 810 n.2; *see also* 29 U.S.C. § 794(a). The ADA applies to state prisons, and all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). Thus, the two statutory schemes are applicable to this situation.

Under Title II of the ADA regarding discrimination in public accommodations, "qualified individual with a disability" means "an individual with a disability who, with or without ... the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). A "disability" includes "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Regulations promulgated under the ADA, in turn, define "mental impairment" as "[a]ny mental or

psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as major bodily functions. 42 U.S.C. § 12102(2). Courts are instructed to construe this definition of disability "in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

Plaintiff adequately pleads that he is a qualified individual who is not receiving the benefit of treatment due to his learning disabilities. While Plaintiff separately challenges that the treatment program for any SDP is essentially a sham (thus raising the specter that Plaintiff isn't missing out on anything by reason of his disability), there is enough here for his ADA and RA claim to proceed. As noted above, Baldwin has been replaced in his official capacity, so Count 2 will proceed against his successor Jeffreys.

**Count 3**

Plaintiff brings a vague claim that Stover has refused to return unspecified personal property to Plaintiff. The Court interprets this as a due process claim. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property without due process of law; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Sorrentino v. Godinez*, No. 13–3421, 2015 WL 294383, at *3 (7th Cir.

Jan. 23, 2015); *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILCS 505/8. As such, Count 3 will be dismissed.

**Count 4**

Plaintiff asserts that Hahs has denied him access to the grievance system and that Stover has retaliated against participants who file grievances in their program reviews. Plaintiff fails to state a claim against Hahs, but does state one against Stover.

Plaintiff alleges that Hahs has deprived him of access to the grievance process by failing to respond to his grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). As such, no claim lies against Hahs.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The question is generally whether a plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). Here, Plaintiff has stated that a program participant's progress (and thus the possibility of release) is based on the staff's evaluations, so a negative report on an evaluation would likely deter a participant from using that process. Further, Plaintiff has adequately pled that punishment of those using the grievance system on their evaluations is a

"policy or practice" sufficient to support an official capacity claim. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978). As such, Count 4 will proceed as to Stover.

## Count 5

Although somewhat vague, Plaintiff also appears to be asserting that Baldwin, as Director of the Illinois Department of Correction and therefore Plaintiff's legal guardian, has breached his fiduciary duty toward Plaintiff.

Illinois' SDP statute provides that "[t]he Director of Corrections as guardian shall provide care and treatment for the person committed to him designed to effect recovery." 725 ILCS 205/8. A fiduciary relationship exists between a guardian and a ward as a matter of law. *In re Estate of Swiecicki*, 477 N.E.2d 488, 490 (1985). It is unclear whether a breach of fiduciary duty in this statutory context is cognizable under Illinois law, but at this point the Court cannot say that the Complaint fails to state a claim. As such, Count 5 will proceed against Jeffreys in Baldwin's place, although the Court welcomes briefing on the issue by the parties.

## Disposition

The Clerk of Court is **DIRECTED** to **TERMINATE** John Baldwin (official capacity) as a defendant in this action, and substitute Rob Jeffreys (official capacity) as a defendant. *See* Fed. R. Civ. P. 17(d), 21.

**IT IS HEREBY ORDERED** that **COUNT 3** will be **DISMISSED** without prejudice as to all defendants because it fails to state a claim.

**IT IS FURTHER ORDERED** that **COUNT 4** will be **DISMISSED** without prejudice as to Defendant Hahs because it fails to state a claim. The Clerk is **DIRECTED** to **TERMINATE** Hahs from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

The Clerk of Court shall prepare for Defendants Jeffreys, Sullivan and Stover: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 9/19/2019**

_Nancy J. Rosenstengel_
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**